

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Modified by 0-6780

Honorable Charles A. Tosch
County Auditor
Dallas County
Dallas 2, Texas

Dear Sir:

Opinion No. O-5937
Re: Allocation to be made of funds
paid in lieu of taxes to county
by Federal Housing Authority.

Your letter of March 18, 1944, requests the opinion
of this department on the above subject. We quote the full
text of the letter as follows:

"I have before me a copy of your opinion
No. O-527 * rendered by your department on May
29, 1943, in which you advise that all money
received in lieu of taxes by the State Treasur-
er from the Federal Housing Authority is subject
to allocation by the Legislature at its next
meeting.

"I will thank you to advise me whether or not
it will be necessary for the County Treasurer to
wait until the Legislature enacts a law allocating
the funds in question, or can the Commissioners'
Court of the various Counties pass an order allo-
cating the money received by them to the General
Fund of the County, or will it be necessary to make
a distribution of all funds of the County?

"In your opinion above referred to, you treat
this money as a gift and not as taxes, so therefore
it might not be necessary for the Housing Authority
to make this payment directly to the Tax Collector's
Office."

*Our Opinion No. O-5270.

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Charles A. Tosch, Page 2


Title 40, Chapter 8, U. S. C. A., "Emergency Public
Works and Construction Projects," enacted by Congress in 1933,
and Title 42, Chapter 8, U. S. C. A., entitled "Low Rent Hous-
ing," enacted by Congress in 1937 created agencies of the United
States Government to assist the several states and political
subdivisions to alleviate present and recurring unemployment
and to remedy the unsafe and unsanitary conditions and an acute
shortage of decent, safe and sanitary dwelling of families of
low income in rural or urban communities.

From time to time the various agencies, their duties
and functions have been transferred or consolidated with other
authorities by Executive Order. We will not attempt here to
give the history of the numerous changes that have been made
in the administration of the various housing units, but for the
purposes of the question herein submitted, we will refer to "The
Federal Housing Authority" only.

Following the program designed for the various agencies,
the United States Government acquired real property throughout the
several states, taking title to the Federal Government, thus remov-
ing from the tax rolls of the state and its political subdivisions
thousands of acres of heretofore taxable land.

We do not think it necessary here to discuss the tax
exempt nature of property owned by the United States Government.

By virtue of this program the states and their sub-
divisions were deprived of the revenue ordinarily assessed and
collected on the property, and realizing that such exempt pro-
perty would not bear its proportionate share of the expense of
local government the Congress provided that the various projects
could, by agreement with the local authorities, contract for a
sum to be paid by the United States to the respective states,
and political subdivisions in lieu of taxes.

Section 422, Chapter 8, Title 40, U. S. C. A., pro-
vides as follows:

"Upon request of any state or political sub-
division in which any such project has been or will
be constructed, the Federal Emergency Administrator

of Public Works is authorized to enter into an
agreement, and to consent to the renewal or
alteration thereof, with such state or subdivi-
sion for the payment by the United States of sums
in lieu of taxes. Such sums shall be fixed in
such agreement and shall be based upon the cost
of the public or municipal services to be supplied
for the benefit of such project or the persons
residing on or occupying such premises, but
taking into consideration the benefits to be de-
rived by such state or subdivision from such pro-
ject."

A similar provision for the payment to the state and
its subdivisions of sums in lieu of taxes, phrased in substantial-
ly the same language, is found in Section 1413, Chapter 8, Title
42, U. S. C. A., paragraph (c) of such reading as follows:

"(c) . . . the amount so paid for any year
upon any such property shall not exceed the taxes
that would be paid to the State or subdivision, as
the case may be, upon this property if it were not
exempt from taxation thereby."

From the above we find that the United States Govern-
ment, though denying any liability for taxes, has submitted to
contract binding itself to bear the proportionate share of local
governmental expense which its property represents in a county
or subdivision, and is to receive therefor the services of the
local government that taxable property would receive.

Pursuant to the numerous Congressional Acts and
Executive Orders discussed above, the Legislature of Texas,
recognized the need of cooperative steps and enacted two measures
designed to effect the purpose.

Article 1269k, Vernon's Annotated Civil Statutes,
Amendatory Act of 1941, 47th Legislature, "Housing Authorities
Law," authorized the promotion of projects in cooperation with
the Federal Government and provided in Section 22 thereof payment

Hon. Charles A. Tosch, Page 4

in lieu of taxes, the agency to agree to make payments to the city or the county or any such political subdivision for improvements, services and facilities furnished by such city, county or political subdivision for the benefit of the housing project.

Article 2351b, -3, Vernon's Annotated Civil Statutes, pertaining to "Resettlement or Rural Rehabilitation Projects," though relating to another "Authority" of the Federal Government, authorizes the commissioners' court to enter into agreements with the United States providing for the payment of funds in lieu of taxes and requires the same services to be performed by the political subdivision as is enumerated above.

The two statutes last above cited, though acknowledging the county or other subdivision's authority to receive the payments in lieu of taxes, did not direct the commissioners' court in the application of sums received. In other words, it did not expressly direct that the monies be placed to the credit of any particular fund of the county or attempt to assert for what purposes the money should be used.

We have previously held in Opinion No. O-5270, that sums paid to the state in lieu of taxes were gifts to the state. Such Federal owned property is subject to the same exemptions from county taxes and as the various projects have no legal obligation to pay funds here under consideration, we must construe these payments in lieu of taxes to the respective counties to be gifts.

Since the Legislature has authorized the counties to receive gifts from the United States Government, in the nature of monies paid in lieu of taxes, but has not directed the method in which said monies shall be allocated to the respective county funds, we are of the opinion that the commissioners' court by the exercise of its discretion may make disposition of the funds in any legal manner for legal purposes. The determination as to the fund or funds of the county to which this money shall be allocated is left to the commissioners' court. The County Treasurer, upon receipt of such monies, shall hold them in suspense or in an account for monies, the status of which is not known, until such

Hon. Charles A. Tosch, Page 5

time as the commissioners' court orders the final disposition of them.

There seems to be no necessity that such funds shall pass through the office of the County Tax Collector since the monies are not received as taxable income.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Harris Toler*
Harris Toler
Assistant

HT:ro



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN